FRED S. MORSE, administrator, *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.   November 11, 1913. — February 27, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* Street railway, Causing death.

At the trial of an action against a street railway company for causing the death
of the plaintiff's intestate, the plaintiff's evidence tended merely to show that
the intestate was seventy-nine years of age and was struck by an electric street
car of the defendant, which was running with unusual speed upon one of two
parallel tracks in the middle of a street forty-five feet wide, that when first
seen by any witness he was "walking just the same as anybody" and was just
leaving the second rail of tracks parallel to those upon which the car was running
and was about to step upon the track where the car was, when he stopped, took
a step backward and then a step forward and appeared "rattled," and that
just before he was struck the gong on the car was rung violently. There was
no evidence that the intestate was suffering from any infirmity. It appeared
that the accident happened on a clear Sunday morning in May at about nine
o'clock, and that, other than the intestate and the car that struck him, there
was no person or vehicle on the street as far as one could see. *Held,* that there
was no evidence of the due care required by St. 1907, c. 392, § 1.

TORT for the death of Henry I. Morse, alleged to have been
caused by his being negligently run into by an electric street
car of the defendant on Warren Street near the corner of Rock-
land Street in that part of Boston called Roxbury. Writ dated
July 6, 1909.

In the Superior Court the case was tried before *Dana,* J.   At
the close of the evidence, which is described in the opinion, the
judge ordered a verdict for the defendant; and the plaintiff
alleged exceptions.

*T. H. Buttimer,* (*N. P. Sipprelle* with him,) for the plaintiff.
*F. W. Knowlton,* (*G. Putnam* with him,) for the defendant.

HAMMOND, J.   While the plaintiff's intestate, hereinafter called
the deceased, was walking across Warren Street, he was killed by
collision with one of the defendant's cars.   The street was about
forty-five feet wide, having in its middle two tracks of two rails
each, the space between the tracks being about five feet wide.

The deceased had crossed one track and was struck as he was attempting to cross the other.

· There were three eyewitnesses to the accident, all called by the plaintiff. Of these Doyle testified in substance that he was attracted by the violent ringing of a gong, "one continuous ringing;" that he then "looked up" and saw that the deceased "was just about to clear the track" when he was instantly struck by the "front part of the car;" that "two steps more would have cleared him;" and that he had not seen the deceased "before then." Welch testified that he heard the gong "rung very hard and he looked up, and the next thing he saw was . . . [the deceased] . . . going up in the air" as the result of the collision; that he [the witness] did not remember that he "observed . . . [the deceased] . . . until just exactly before the collision." Kate J. Gerry testified that she heard the "clang of the bell," looked out of the window and saw the body of the deceased "in the air." Barron testified that he first saw the deceased "between the two tracks," that he was "walking just the same as anybody;" that he (the witness) heard the gong sound when the car was about four or five feet from the deceased; that the latter was then between the two rails of the last track he was to cross and tried to get out of the way but was struck. He further testified that just before the deceased reached the third rail, that is, the first rail upon the last track he was attempting to cross, he stopped and then took a step back and then a step front, and appeared "rattled."

The accident happened about half past nine o'clock on a quiet Sunday morning in May, 1909, which appears to have been a pleasant day. As far as one could see the street was clear of any other vehicles or of travellers of any kind, except the deceased and the oncoming car. Nor is it shown that any people were waiting at any stopping point in the vicinity to take a car. There was no evidence that any person, except the deceased, was crossing the street, or that there was anything either to obstruct his view, distract his attention or deaden the noise of an approaching car.

The deceased was seventy-nine years of age and it was not contended by the plaintiff that he was suffering from bodily infirmity, or that his sight or hearing was in any way impaired. The evi-

dence as to the speed of the car was conflicting, but would have justified a finding that it was greater than usual.

There is absolutely no evidence of the movements of the deceased from the time he stepped into the street for the purpose of crossing until he was seen between the two tracks, dangerously near the track upon which the car was coming. What care he took to reach that place; whether he looked for the car; whether, if he did, he saw or heard it, and, if so, whether he formed a judgment as to whether the motorman would slacken the speed of the car; or, if not, whether even then he thought that there was a reasonable chance to cross the track — in a word, what he knew or realized about the presence of the car, or whether his action was in any way influenced by such presence, are all matters of pure conjecture. There is no evidence that he had reached that place by the exercise of due care.

The fact that under the circumstances he was "rattled," if it be a fact, does not help the case. And it is manifest that in the final attempt to cross the last track he was acting not in the exercise of due care but in an exceedingly rash manner. The case must stand in the class with *Stone* v. *Boston Elevated Railway*, 211 Mass. 365.

The verdict was rightly ordered for the defendant.

*Exceptions overruled.*