E. Virginia Keefe *vs.* Eastern Massachusetts Street Railway Company.

Middlesex.   November 10, 14, 1927. — January 5, 1928.

Present: Braley, Crosby, Carroll, Wait, & Sanderson, JJ.

*Negligence,* Street railway: headlight.

At the trial of an action of tort against a street railway company for personal injuries received when an automobile driven by the plaintiff collided with a street car of the defendant, the cause of the collision being alleged by the plaintiff to have been negligently allowing the headlight of the electric car to glare and so to dazzle and blind the plaintiff that he was unable to distinguish the car, there was evidence that at 6:45 p.m. of a day in October the street car had stopped at a point on the track which was off the travelled way at the left hand side of a public way as the car faced; that about twenty to twenty-five feet in front of it the track crossed the way to the other side; that the car carried a bright headlight; that the plaintiff, approaching the street car on an up-grade at the rate of twenty-five miles per hour, became confused by its headlight and drove toward his right, off the travelled way to the left of the street car, striking its left forward end.  There was no evidence that the motorman could dim the headlight.  There was no contention that the light was not a proper one for the equipment of an electric car. There was a verdict for the plaintiff.  *Held,* that there was no evidence of negligence of the defendant or of its motorman, and a verdict for the defendant should have been ordered.

Tort for personal injuries.   Writ dated January 8, 1925.

In the Superior Court, the action was tried before *Hammond,* J.   Material evidence and exceptions saved by the

defendant are stated in the opinion. The jury found for the plaintiff in the sum of $750. The defendant alleged exceptions.

*A. F. Bickford,* for the defendant.

*W. R. Scharton & M. Palais,* for the plaintiff, submitted a brief.

SANDERSON, J.   In this action the plaintiff is seeking to recover for personal injuries received on October 11, 1924, at about 6:45 in the evening, when the automobile which she was operating on Elm Street, in Stoneham, came into collision with a standing street car. The jury found for the plaintiff. The defendant's exceptions relate to the refusal by the judge to direct a verdict for the defendant, to his refusal to give certain rulings requested, and to portions of the charge. The count on which the case went to the jury charged the defendant with negligently allowing the headlight of the electric car to glare and so to dazzle and blind the plaintiff that she was unable to distinguish the car and collided with it.

At the place of the accident, Elm Street runs easterly toward Wakefield and westerly toward Stoneham, and a single track of the defendant is located at the extreme southerly side of the street and off the travelled way. About twenty to twenty-five feet west of the place of the accident the track crosses from the southerly side of Elm Street to its northerly side. Approaching the scene of the accident from Stoneham there is an up grade. The car of the defendant, headed toward Stoneham, was standing on the south side of Elm Street with the front end about twenty to twenty-five feet east of the point where the track starts to cross to the northerly side of the street. The automobile driven by the plaintiff was proceeding toward Wakefield.

The plaintiff testified that she had never driven over the road before; that she knew there was a railway track upon it, but did not know that it crossed the street at the top of the hill, and did not expect a street car on the right side of the road when the tracks up to that point were on the left; that she started up the incline on Elm Street at a rate of about twenty-five miles an hour, and as she came around a curve in the road she saw a glaring light, a very bright light and

reduced her speed to between eighteen and twenty miles an hour, and continued on her right hand side of the road; that because of the light she could not tell whether the object was moving or not, she took it to be either a car with one light or a motorcycle with an extremely bright light on it, and realized it was a trolley car when the glare of the light had just passed and she was about fifteen feet away from it; that she could not then turn to the left and had to turn to the right, and the last thing she remembered was that she turned and would have "switched in" had she seen a way to avoid the trolley car, but two telegraph poles loomed up and she simply pulled down her emergency brake, pushed in the clutch and put on her foot brake, and then became unconscious as a result of the collision. She further testified that the glaring light blinded her as she was approaching it for about five hundred feet, but that she was not so blinded that she could not see the road on which she was travelling; that she presumed that the object whatever it was would keep to the right; that going at a speed of twenty to twenty-five miles an hour she could stop her car in twenty to twenty-five feet, but it never occurred to her that the object with the light might be a street car until she was within fifteen feet of it.

The motorman called by the plaintiff testified that when he came to the brow of the hill, before crossing from the southerly to the northerly side of the street, he brought the car to a stop; that he thought the car was standing there at least a minute or so; and he first saw the automobile coming from Stoneham when it was about seventy-five to one hundred feet away from him. A witness, who came to the scene of the accident soon after it occurred, found the front of the automobile against the left forward end of the street car at the extreme southerly side of the road near some telephone poles.

The defendant introduced evidence tending to prove that the light on the car was of a kind in common use on this and other lines of street cars; it was not an arc light, but a "Golden Glow" type of headlight with a tungsten bulb in front of a reflector; that the lens of the lamp is corrugated to throw

the light downward, and is so made that it would spread its light to cover the inner and outer track when the car .is moving. There was no evidence that the motorman could dim the light, although the jury were instructed, subject to the defendant's exception, that they might consider the motorman's failure to dim the light on the question of the defendant's negligence. At the end of the charge the judge stated to the jury that both counsel had agreed that there was no evidence in the case that the light could be dimmed.

G. L. c. 161, § 98, amended by St. 1922, c. 430, requires street railways to equip their cars when in use with such headlights as may be required from time to time by the department of public utilities. If the motorman had turned the light off as he was about to cross the street, the car would be left without a headlight at an hour in the evening when the safety of the travelling public might reasonably require that a light be displayed. He owed a duty to all travellers who might be upon the highway. There is no contention that the light was not a proper one for the equipment of an electric car. Upon the plaintiff's testimony the glare of the light resembled that of an automobile or motorcycle.

In *Spodtea* v. *Berkshire Street Railway*, 212 Mass. 599, the plaintiff, blinded by a "large night reflector" headlight on a street car as it turned a curve, ran his bicycle into a team at a place where there was room for him to pass without collision if he had not become blinded by the light, and it was held that he could not recover. It appeared that the track was at the side of the street and the light of the kind which the plaintiff had ordinarily seen on street cars.

In *Hansen* v. *Fitchburg & Leominster Street Railway,* 222 Mass. 116, the headlight of a street car as it came around a curve frightened a horse which bolted and caused the accident. One of the contentions was that the motorman should have turned off his light sooner, but it did not appear that he did not do this as soon as he saw that the horse was frightened. A verdict for the defendant was held to have been ordered rightly.

In *Anger* v. *Worcester Consolidated Street Railway*, 231 Mass. 163, it was held not to be negligence upon the facts

in that case for the motorman to use a powerful searchlight of a model in use upon other cars in places such as that in which the accident occurred.

In *Daigneau* v. *Worcester Consolidated Street Railway*, 231 Mass. 166, a glaring headlight on the defendant's car temporarily blinded a man who stood near the street car rails watching its approach, and who was struck by the running board, and it was held that the order directing a verdict for the defendant was right. The court said, at page 168, "It was not evidence of negligence if the car carried a powerful headlight whose rays had a tendency to blind the sight of the plaintiff as it approached the point where he was standing. It is a matter of common knowledge that such headlights are in general use under similar circumstances upon electric street cars at night."

In *Tupper* v. *Union Street Railway*, 237 Mass. 485, the plaintiff was riding in an automobile which ran into an unlighted team, and the cause alleged for the collision was that the driver of the automobile was blinded by the glaring headlight on an approaching street car. The evidence tended to show that the driver was blinded when the car was one hundred feet away and that the light was shut off when the car was fifty feet away; there was no evidence that the motorman saw the automobile before he shut off the light. In that case it was held that there was no evidence of negligence of the motorman. In some of the cases cited the fact that the dazzling was but momentary was considered important. In the case at bar the time required by the plaintiff to go five hundred feet at the rate of speed to which she testified would be very short.

In *Bailey* v. *Worcester Consolidated Street Railway*, 228 Mass. 477, the plaintiff, blinded by a glaring arc headlight, misjudged the space between the track and a carriage he was passing and collided with the street car. He was permitted to recover. In that case there was evidence that the motorman had in view the automobile in which the plaintiff was approaching for a thousand feet or more and failed to shut off the brilliant arc headlight in violation of a rule of the company, and there was other evidence of negligence.

The evidence would not justify a finding that the motorman reasonably should have anticipated that the natural result of leaving the headlight on might be that an approaching automobile driver would be so blinded that she would leave the travelled part of the road which she was able to see and run into the lighted car standing at the side of the road. In our opinion the evidence did not justify a finding that the defendant was negligent, as alleged, and for that reason the defendant's motion for a directed verdict should have been granted.    The conclusion here reached makes it unnecessary to consider whether the plaintiff was guilty of contributory negligence, or to pass upon other exceptions of the defendant.

*Exceptions sustained.*

*Judgment for defendant.*